UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RAYMOND N. WILL,

       Petitioner,

vs.                                 Case No. 3:05-cv-1071-J-12HTS

JAMES R. MCDONOUGH, et al.,

       Respondents.

_____

**ORDER**

**I. Status**

Petitioner, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 and a Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #2) on October 11, 2005.  He challenges his 2001 state court conviction for second degree murder and arson, alleging that he received ineffective assistance of counsel because counsel failed to: (1) file a motion to suppress Petitioner's confession, which was obtained without a knowing and voluntary waiver of his Miranda[1] rights; and, (2) investigate and raise a

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

defense based upon Petitioner's psychological state at the time of the crime.

On February 13, 2006, Respondents filed a Response to Petition (Doc. #15) (hereinafter Response).  Petitioner's Reply (Doc. #17) was filed on March 3, 2006.  Thus, this case is ripe for review.

## II. Procedural History

On July 25, 2000, Petitioner was charged by indictment with one count of first degree murder and one count of arson.  Ex.[2] A.  On May 3, 2001, after a trial by jury, Petitioner was found guilty of second degree murder and arson.  Ex. C at 349; Ex. D.  On July 13, 2001, the trial court adjudicated Petitioner guilty of these offenses and sentenced him to forty years of imprisonment for the second degree murder and to a concurrent fifteen year term of imprisonment for the arson.  Ex. E.

On direct appeal, Petitioner's appellate counsel filed an Anders[3] brief, and raised the following issue: whether the identification of Todd Whitnum (the victim) as the person named in the indictment established a corpus delicti.  Ex. I.  On February 12, 2002, the Fifth District Court of Appeal per curiam affirmed the judgment of conviction, without issuing a written opinion.  Ex. K.  The mandate issued on March 1, 2002.  Ex. M.

---

[2] The Court hereinafter refers to the exhibits in Respondents' February 15, 2006, Appendix (Doc. #16) as "Ex."

[3] Anders v. California, 386 U.S. 738 (1967).

On February 10, 2003, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he raised six grounds, including the same two claims that he presents in the Petition before this Court. Ex. N. He filed a supplemental motion for post-conviction relief on March 10, 2003, in which he raised one additional claim. Ex. O. The trial court entered an order denying the motion and supplemental motion on December 22, 2004. Ex. R. Petitioner filed a second motion for post-conviction relief on November 29, 2004, in which he contended that he should be granted a new trial based upon newly discovered evidence. Ex. S. The court denied the second motion on December 27, 2004. Ex. T.

Petitioner filed a motion for rehearing, requesting the court to reconsider its December 22, 2004, and December 27, 2004, orders denying relief. Ex. U. The court entered an order denying the motion for rehearing on March 16, 2005. Ex. V. Petitioner appealed, and on July 5, 2005, the Fifth District Court of Appeal per curiam affirmed the trial court's order, citing <u>Robinson v. State</u>, 770 So.2d 1167 (Fla. 2000). Ex. W; Ex. X; Ex. Y. The mandate issued on July 22, 2005. Ex. Z.

Respondents assert that this action was timely filed. <u>See</u> Response at 7-8. This Court agrees.

3

### III.  Evidentiary Hearing

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox

4

v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
>> A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted).  A general framework of substantial deference governs our review of every issue that the state courts have decided:
>
>> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant

> Supreme Court precedent and arrives at a result opposite to ours.
>
> . . . .
>
> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.
>
> Williams v. Taylor, 529 U.S. 362, 405-07, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir.), cert. denied, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

6

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Findings of Fact and Conclusions of Law

Petitioner presents ineffective assistance of trial counsel claims in grounds one and two.  "The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . .  Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of

8

> professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .
>
> A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.[4]

Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S.

---

[4] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

As noted previously, Petitioner contends that he received ineffective assistance of counsel because counsel failed to: (1) file a motion to suppress Petitioner's confession, which was obtained without a knowing and voluntary waiver of his <u>Miranda</u> rights; and, (2) investigate and raise a defense based upon Petitioner's mental state.  Petitioner presented these same ineffectiveness claims as grounds one and two in his first motion for post-conviction relief, and after identifying <u>Strickland</u> as the controlling authority, the trial court adjudicated the claims as follows:

> <u>Ground One</u>: Defendant alleges counsel failed to file a motion to suppress his confession, which he argues was the only evidence used to obtain a conviction.  He contends that officers tricked him by telling him to cooperate because the only charge he could possibly face would be disposal of a human body; he was rushed into signing a document which he believed was a search warrant, although it was actually a Miranda waiver; he was threatened with the death penalty if he refused to continue with the interrogation; and he requested that questioning cease, but officers ignored his request and threatened more severe charges.
>
> During the interrogation, Detective Lallement reminded Defendant that he was in custody, had been read his rights, and had agreed to talk.  *See* trial transcript, pages 114 and 118.  This occurred before the tape recorder was turned on, but the record shows that Defendant acknowledged and agreed.  This refutes his claim that he did not wish to

> continue the questioning. Contrary to Defendant's argument, counsel had no legal basis to file a motion to suppress, and there is no reasonable probability that such a motion would have been granted.
>
> <u>Ground Two</u>: Defendant alleges counsel failed to ensure that psychological evaluations were completed and failed to call an expert witness in psychology to support the defense at trial. He states that at the conclusion of the "partial examination," he asked the examiner for an idea of the results, but was told this information could not be provided until a full examination was completed. However, there was no follow-up. Defendant argues that counsel's failure to have a complete evaluation was unreasonable since the defense submitted the theory that Defendant and the victim loved each other but Defendant feared for his life and that of his mother and sister, and the stresses placed upon him by the victim caused the incident.
>
> This claim is conclusory and, therefore, insufficient to establish prejudice. The only expert testimony which would have been admissible would have been that which established the elements of insanity, and Defendant does not allege any facts which would support such a finding. Expert testimony on the effects of fear and threats would not have been admissible to show that Defendant had a "diminished capacity" to commit the offense charged.

Ex. R at 2-3 (footnote omitted).

These claims were rejected on the merits by the trial court, and the appellate court per curiam affirmed the trial court's order. Thus, there are qualifying state court decisions. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective

reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of these claims.

Additionally, this Court finds these claims to be without merit. The following portions of the record are pertinent in assessing Petitioner's first ineffectiveness claim. At trial, Detective Richard Lallement testified that on May 10, 2000, he arrested the Petitioner, and then he and Detective Chuck Deisler interviewed him. Ex. C at 101-03. The interview was conducted in an interview room at Detective Lallement's office and was videotaped. Id. at 103. The interview began at approximately 9:30 a.m. Id. The Petitioner did not appear to be under the influence of alcohol or drugs and the Petitioner did not contend that he was under the influence of anything at that time. Id. The Petitioner appeared to be rational and nothing happened during the interview

12

that led Detective Lallement to believe the Petitioner had any mental defects. Id. at 103-04.

Before the interview started, Detective Lallement advised Petitioner of his Miranda rights by reading those rights "line-by-line, word-for-word" from a preprinted form. Id. at 104. Petitioner acknowledged that he understood his rights and agreed to waive his rights. Id. at 104-07. Petitioner signed the rights waiver form. Id. at 105.

Detective Lallement testified that he did not make any promises to the Petitioner and that nobody threaten him in any way. Id. at 108. The interview lasted approximately two hours and thirty minutes, and, during that time, the Petitioner was permitted to take three or four breaks. Id. at 111.

The videotaped interview was played for the jury. Id. at 118-202. The Court has read the transcript of the videotaped interview, and there is nothing in the transcript that would indicate that Petitioner's statement to the interviewing officers was involuntary.

Petitioner's attorney could have reasonably believed that a motion to suppress would not have been successful because Petitioner signed the Miranda rights waiver, Detective Lallement testified that Petitioner waived his rights without any threats or promises being made and he appeared to be coherent and rational. And, as previously stated, there is absolutely nothing in the

13

transcript of the videotaped interrogation which would support Petitioner's claim of coercion and involuntariness. Thus, counsel's performance was not deficient. Furthermore, Petitioner was not prejudiced by counsel's failure to file a motion to suppress since it is highly unlikely that the motion would have been successful for the above-stated reasons. Thus, this claim is without merit.

The Court also finds Petitioner's second ineffectiveness claim to be without merit. Petitioner contends that counsel should have pursued a "mental state defense" because, at the time of the shooting, Petitioner was suffering from symptoms consistent with post-traumatic stress disorder or battered child syndrome. Petition at 14. He asserts that evidence of his psychological symptoms would have corroborated his claim of self-defense.

As noted by the trial court, this sort of evidence would have been inadmissible. See also Response at 15-16. Furthermore, in his confession to the police, Petitioner initially claimed that he acted in self-defense; however, he finally admitted that he did not act in self-defense. Ex. C at 199-202. Thus, even if counsel had attempted to present evidence of Petitioner's alleged psychological state, and was permitted to do so, the Court is convinced that the outcome of the proceeding would have remained the same. Counsel's performance was not deficient and Petitioner was not prejudiced

when counsel failed to pursue this defense. This claim is clearly without merit.

Any claims not specifically addressed are found to be without merit. Thus, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this  22nd   day of November, 2006.

HOWELL W. MELTON
United States District Judge

ps 11/14
c:
Raymond N. Will
Assistant Attorney General Ann M. Phillips

15